Good morning, your honors. My name is Deborah Brady Davis. This is my colleague, Ramona Hallam. Also present this morning is appellant Mr. Kent Buckley. Your honor, we feel that there are two main points we'd like to discuss with the court this morning. The lower court found that the test involved in this case was a professionally developed scored test. The appellant disagrees. I agree with you that it was not a professionally scored test because there was nothing professional about it. But where does that get you after you've had a jury trial? Well, where it gets us, your honor, is that it adds to the issue of pretext, which is also a key component in this particular case. This case is a disparate treatment case. And as such, the appellant had the burden of proving his prima facie case. The lower court established that Mr. Buckley did that, and that the basis of having established that is race, color, and gender. For the position for which he was most qualified. And in submitting their legitimate non-discriminatory reason, the defendant argued that it was because of the results of this test. This non-professionally developed scored test that led to Mr. Buckley's non-selection. Now, your honor, we feel that another problem... We had a bench trial. I said jury trial, but you had a bench trial. We had a bench trial. And the judge did acknowledge that the test was less than objective. But he nevertheless said even though there were some deficiencies in the test, they were not, the results were not based on race. How do you get around that finding? Well, your honor, because what the court further erred in doing was not looking at the fact that the test was developed at the beginning stages by considering who the candidates were. Despite the fact that on its face it appears that that is not the case. Mr. Buckley was taken into consideration when that test was created. The way we can prove that and point the court to is that when the selecting official was examined at the trial and asked how he developed these questions, particularly given that the vacancy announcement listed eight requirements for the position, the selecting official said that he did not include two of those position requirements. And the reason he said he did not address two of these position requirements is because Mr. Buckley would have been the only one who would have been advantaged by that. Did he say that was the reason or you're inferring that that's the reason? He said that was the reason. I did this to disadvantage Mr. Buckley? What he said is if we had included questions on those two points, the only person who would have been able to respond, who would have done well, I'm paraphrasing, your honor, is Mr. Buckley. Weren't there some other things? He sort of said what I was looking for here was supervisory qualities. I didn't care so much about the substance of transportation or the substance of scheduling or whatever the other thing was. It seemed like there were a couple of the other candidates who had some substantive expertise that also wasn't addressed. It wasn't just Mr. Buckley who was affected by the lack of substantive expertise questions as opposed to supervisorial expertise type questions. Is that right? That is correct, your honor. But when you look at the position that Mr. Buckley was applying for based on the vacancy announcement that was issued by the Postal Service, those eight specific requirements included transportation experience. To have ignored that and to have said, no, all I'm going to do is focus on supervision was deliberately designed to prejudice Mr. Buckley. Another thing that we wanted to bring to the court's attention is that the person who was selected, the non-African American female who was selected, was given the advantage of being able to work with this supervisor and therefore to know, an advantage Mr. Buckley did not have, to know what this particular supervisor was looking for. The only other person who was given that same advantage was the other female candidate. Counsel, what's our standard of review? That's what I was going to ask. I beat you to it. You beat me. Well, your honor, the standard of review here, this is a pretext case. Well, we've had a bench trial, so what's our standard of review? I mean, what we're saying is this all sounds like good argument that I would have bought. I'm not saying I would have, but supposing I would have. I'm not there now. I'm not the DJ, though I love that job. The problem is that we are now on appeal, and the judge is the finder, and so what's his standard of review? Your honor, I believe the standard of review is clear air. Well, in fact, it's a preponderance of the evidence standard, isn't it? When he's deciding the case. It's a preponderance of evidence for him, and then for me, I've got to find clear air. Now, he's looking for preponderance of the evidence. This doesn't mean more evidence than not. It doesn't mean he's got to have the most. I wish all of that was easy to do, but he's just got to have some substantial evidence. He thinks it's bigger than not. Now, I've got to find it was clear air, and all he said was, Well, there's some problems in here, but based on me hearing the evidence, I honestly believe the employer did this for a legitimate reason. Now, it's back to you, and you have to say pretext, and he says he didn't overcome the pretext. We feel, however, your honor, that we can meet the standard of showing at this point that there was clear air committed by the lower court in making that decision What case is close enough to suggest that the old judge made a bad, clear air decision? We think the case that should be applied is the Geraghi case, your honor. That's the closest? Yes, we think that's the case that would apply in this case. What the court failed to do at the lower level was to look at the significance of circumstantial evidence. And certainly there was no direct evidence. But when looked at, when the totality of the circumstances are reviewed, the circumstantial evidence, particularly given the fact that that test was created with Mr. Buckley in mind at the outset, that coupled with the errors that were made, which are considered by the lower court flaws. But we feel that that was clear air when you look at the fact that the test was deliberately designed to make it more difficult for Mr. Buckley, the only African American male candidate, to score well on that. Kelsey, in the Geraghi case, we affirmed the district court's determination that the victim was, that the plaintiff was a victim of disparate treatment. And if the finding had been made, you know, that your client, we would have affirmed that probably. The difficulty is going behind that determination that's made by the trier effect. That's why I see this case as different than Geraghi, because in that case we were affirming a finding of disparate treatment. So do you have a case where the finding of no discrimination was overturned on a clear air standard? Your Honor, at this point, could I reserve? I only have a minute and 20 seconds left. Yes, you may. Thank you. All right. Good morning and may it please the Court. This is the United States Attorney, Anwil Khorshid, on behalf of Appellee Johnny Potter, the Postmaster General. Your Honors, this appeal involves a bench trial where the district judge found that there was no discriminatory intent whatsoever. Counsel, do you seriously believe that this was a professionally scored test that was administered in this case? No, Your Honor. Okay, so you're not relying on that? No. Okay, so then what justifies the result then? If the test was not professionally developed so it qualifies as a scored test, then what can underlie the decision that was made? Well, Your Honor, the district judge heard all the evidence, thoroughly examined the witnesses. That wasn't my question. My question was, if you can't rely on this test as being professionally developed, then what is the basis for the decision then? Well, the basis is that there was no unlawful discrimination, and that was based on the witnesses that testified at trial, the plaintiff's testimony, as well as the district judge weighing and balancing the credibility and the evidence that was presented to him. Now, what happened was the judge, once he heard all this evidence, came to the ultimate conclusion that there was no discrimination whatsoever, not on race, not on gender, and not on color. And what would you posit as the reason for the decision? The district court found that if he were hiring, he would have hired Mr. Buckley. The district court found that the test was not well written and not well scored. I know that there's no necessity to posit another reason, but what other reason might there be besides race discrimination? Because the other candidates were more qualified, even though the district judge may have felt that the candidate who was ultimately hired was not better qualified than Mr. Buckley. That's not the issue. The issue is, under all Title VII cases, whether discrimination, unlawful discrimination, occurred. One of the ways of showing that there's discrimination is if there's a less qualified person who's hired as opposed to a person who's better qualified. So the person who was selected, how is that person better qualified if we put aside this nonprofessional test? That's correct, Your Honor. And other things also may go to the big picture as to whether there was discrimination or not, including the test, including what questions were asked. But the two witnesses who testified on behalf of the Postal Service, Ms. Alponte and Mr. Alden, they both stated that they were looking, as Judge Wilkins stated, they were looking for someone who had supervisory skills. And they both also stated that Mr. Buckley sadly didn't perform as well as they had hoped during the interview. We're setting aside the test. That's the interview. I said separate and apart from the test, how was the person who was selected better qualified than the plaintiff? Well, that was something for the district judge to consider. I'm asking you, if we're looking at pretext, that's one of the things we can look at. If everyone acknowledges there were problems with the test and the way the test was developed and the way it was applied and the way it was scored. So if we set that aside, what do you have to show there was no pretext by way of saying that the person who was selected was better qualified? Well, Your Honor, there was evidence presented that Ms. White had finished what was called the Associate Supervisor Program. She ranked highly in that class. She had experience, although admittedly not as much as the plaintiff. She did have supervisory experience. She did have transportation experience. She was able to provide the supervisory skills that the selecting officer was looking for. And also, one step back, the five applicants that were selected or filtered out were done by a committee who looked at all the different job descriptions and job requirements and they deemed these five applicants to be qualified. So that's not the question. The question is whether there was unlawful discrimination and whether there was a discriminatory animus against the plaintiff. And there was none shown here. The burden was on the plaintiff to show that there was discriminatory intent, and he failed to show that. Now, the district judge, as he did, he weighed the evidence. He considered the arguments that Mr. Buckley made as to the test not focusing on his skills. He also focused on the Postal Service's witnesses' testimony as to how they created these questions and how they were related to the job. He weighed all that and he based it and he made credibility decisions. And in the end of the day, he deemed that there was no discriminatory intent whatsoever in the process, in the selection, or in the decision not to promote Mr. Buckley. Can you justify creating questions that don't address the substantive elements of the transportation? What was the other thing, the time? There was one other substantive area. There were two. There was the transportation operations, which dealt with the computer program. And the second was transportation itself. Transportation skills. So can you justify or explain why one might put together a list of questions, let's call it, that don't address the substantive areas of the department the person would be supervising? I'll try to, Your Honor. And Appelli believes there's two reasons. First, as stated previously, when the committee vetted these applicants, it deemed that these applicants had the requisite transportation skills and transportation experience to get through that first stage. And secondly, the interviewer had many years of transportation experience and he testified that he could teach all that to the right supervisor and he could teach the computer skills which were required in requirement number eight. And he could also teach the, I believe it was the inspection of vehicles, that the supervisor needed to be able to inspect vehicles for safety purposes. Those weren't things that were the focus of a supervisor. Why would he make the statement that the only person who would be advantaged by that would be the plaintiff? Why would he make that statement? I don't know, Your Honor. Well, isn't that kind of an indication that he was trying to disadvantage the plaintiff? That may have been some evidence that was presented to the court. And Mr. Alden, as the court stated, was very credible. He was very honest in his testimony. And that was something for the court to weigh. And with that, if there are no further questions, Appelli would submit the matter. It appears there are none. Thank you. Counsel? Counsel, was there a reply brief filed in this case? No, there was not, Your Honor. Is there any reason why you thought it wouldn't be helpful to have a reply brief? Your Honor, we thought it would not be helpful. In retrospect, we realize that was probably not a good decision on our part. Your Honor, in response to what the counsel said, if the committee who qualified the pool of applicants basically said that all of them met the position requirements, then there would have been no reason for the selecting official to create this nonprofessionally developed test. He could have just picked Ms. Whitehead from the beginning without trying to come up with this pretext of having engaged in a test that justified her selection. Let me ask you something, Counsel. Do you really believe that one had to have a test involved in this situation in order to carry the burden? That, no, I don't. The defense employer, they have a burden to put forth an honest reason why they did not pick that particular person. Now, there are defenses in the statute, one of them being the test. But if one doesn't have one of those defenses, one still can win the case, can't he? And, Your Honor, I'm a little confused. Because when you say one, are you talking about the defendant could win? Yeah, the defendant. I mean, what I think your case suggests is that simply because one picks one of the defenses that are outlined in the statute that a plaintiff or that an employer must use, that unless he picks one of those defenses, the employer, he loses. I don't think that's what the statute says, is it? It says that's a defense you can have which is an automatic defense. But the burden of proofs, nonetheless, switches back and forth, regardless of whether you have one of those defenses or not, doesn't it? That's right, Your Honor. And, therefore, if, in fact, the trier of fact believes the employer carried his burden in saying what his honest reason was, whether there was a test or not is just a defense he could have had which would have been an automatic good win. But because the defense was not adequate, nonetheless, the trier of fact can switch that burden of proof, based on the jury instructions, back to your client to show pretext. And at that point, no pretext was shown to the trier of fact. And that's the worry that I have under cutting this decision. The trier of fact, in fact, knowing the burden of proof better than the jury ever would, because it was the trial judge, says no, it doesn't happen. So how do I find that to be clear error? Because, Your Honor, the clear error was omitting any consideration, failure to consider the circumstantial evidence. Your Honor, the cases are clear that to prove discriminatory intent does not require simply direct evidence. And looking at everything that happened here as a whole, which is what we're saying did not occur, the Court did not properly look at the circumstantial evidence in this case, which included the fact that Mr. Buckley was deliberately prejudiced in the development of the test. And it had to be done at the beginning when the candidates were known to Mr. Alden, because if they had not been done when the candidates were known to Mr. Alden, he would not have had to eliminate those two questions, questions four and eight of the vacancy position. So he had to know that Mr. Buckley was one of the candidates. And that is a big piece of the circumstantial puzzle here. In addition to shaving points for Mr. Buckley, misgrading Mr. Buckley's test, nobody else had those convenient errors occur to him. And he's the only African-American male candidate. So, Your Honor, in summary, we believe that looking at the circumstantial evidence in this case was not done. And as a result, the clear error of omitting to look at the impact of the circumstantial evidence on the discriminatory intent here prejudiced Mr. Buckley to his great disadvantage. I'm just curious as to why your client elected to have a bitch trial as opposed to a jury trial. Your Honor, that's another one of those if we could do it over again, we wouldn't do that. Mr. Buckley and I talked about that, and we both agreed to do that. And in retrospect, we regret that we made that decision. You have to call them as you see them at the time. I'm being honest with you. I was just curious. All right, thank you. Thank you to both counsel. The case just argued is submitted for a decision by the court. The next case on calendar for argument is Drimmer v. WD-40.
judges: Rawlinson, Smith N. R., Wilken